***NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRENE FIORELLO,<br><br>            Plaintiff,<br><br>    vs.<br><br>WAMU (a/k/a) JP MORGAN CHASE HOME FINANCE, LPS FIELD SERVICES, ALLSTATE INSURANCE COMPANY, JOHN DOE and JOHN DOE COMPANY, et al.,<br><br>            Defendants. | Civil Action No. 10-0273 (FLW)<br><br>**OPINION** |

**WOLFSON, United States District Judge:**

Pro se plaintiff Irene Fiorello ("Plaintiff) filed the instant twenty-nine-count Complaint and Third Party Complaint against Defendants Washington Mutual Bank ("WaMu") and its successor JP Morgan Chase Home Finance ("Chase"); LPS Field Services ("LPS"); and Allstate Insurance Company ("Allstate") (collectively referred to as "Defendants").[1]  Plaintiff alleges that she obtained a mortgage with WaMu and thereafter, WaMu and LPS illegally broke into the mortgaged property on several occasions after Plaintiff defaulted on the loan.  In the Complaint, Plaintiff asserts various causes of action arising out of the alleged "break-ins" against WaMu and LPS.  Plaintiff further alleges in the Third Party Complaint that Allstate improperly denied her insurance claim filed as a result of the first break-in.  Federal Deposit Insurance Corporation ("FDIC")

---

[1] Plaintiff filed the Complaint against defendant WaMu and improperly filed a Third-Party Complaint against defendants LPS, Allstate and John Doe, and John Doe Companies.  In this Opinion, the Court will refer to, and address, both complaints.

requests that it be substituted as defendant for WaMu and Chase in its capacity as the receiver of WaMu.[2]  In the present matters, Defendants move to dismiss Plaintiff's Complaint and Third-Party Complaint.  In their respective motions, Allstate contends that the contractual statute of limitations has run on all insurance related claims against Allstate; FDIC asserts that this Court does not have jurisdiction over matters against FDIC as the receiver; and LPS seeks to dismiss all counts of the Complaint, except Counts IV, V, VI, and X, for failure to state a claim.  For reasons that follow, the Court grants the motions by FDIC and LPS.  With respect to Allstate's motion, the Court converts that motion to a summary judgment motion pursuant to Fed. R. Civ. P. 12(d).  Allstate and Plaintiff shall have twenty days from the date of the Order accompanying this Opinion to supplement the record.

I.      **Factual and Procedural History**

For the purposes of these motions, the Court will regard Plaintiff's allegations in the Complaint as true.[3]  Plaintiff is the owner of a residential home located at 617 Ninth Avenue, Manchester, NJ (the "Property").  Complaint, First Count, ¶ 1.  The Property was purchased by securing a mortgage loan with WaMu on May 10, 2006.  Id., ¶ 2.  Plaintiff also obtained a home

---

[2]     The Court notes that in FDIC's motion to substitute, FDIC states that WaMu became insolvent prior to the commencement of the instant case, and FDIC was appointed as receiver and became the successor-in-interest of the mortgage.  FDIC then sold the mortgage to JP Morgan Chase Bank ("Chase"), but agreed to retain liabilities that arise out of WaMu's pre-failure lending activities.  According to FDIC, all claims against Chase in the Complaint are covered by this agreement, and therefore FDIC argues that it is the real party in interest in the instant matter for all claims made against Chase.  The Court will further address FDIC's position infra.

[3]     Plaintiff includes numerous allegations in her 38-page Complaint and Third-Party Complaint.  However, with respect to some the allegations, the Court cannot discern their relevance to this case.  In that regard, the Court will only recount relevant allegations.

equity loan from WaMu for the same property. Id., ¶ 3. Plaintiff's mortgage has since been purchased by defendant, JP Morgan Chase Home Finance. Id., ¶¶ 2-3. While it is not explicitly pled, Plaintiff went into default on her mortgage.[4] See generally, Complaint, Second Count, ¶ 4-9.

After the default, Plaintiff alleges that on four separate occasions, February 14, 2008, March 26, 2008, September 28, 2009 and October 9, 2009, WaMu and its agent LPS[5] broke into the Property, vandalized and destroyed Plaintiff's personal property, and burglarized Plaintiff's home without Plaintiff's knowledge or permission. Id., ¶ 9. In addition, Plaintiff alleges that WaMu and LPS changed the locks on the Property, precluding Plaintiff from entering the Property. Id., ¶¶ 16-20. Plaintiff alleges that under the terms of the mortgage, WaMu had the responsibility to contact Plaintiff in the event it wanted access to the Property. Id., ¶ 4. These alleged "break-ins" are the subject of this suit.

Plaintiff and Chase and/or WaMu had numerous telephone conversations with Plaintiff beginning on November 30, 2007, and continuing through February 14, 2008, regarding the first and second mortgage liens on the property. Those conversations included discussions regarding mediation and settlement, and short sale offer proposals by Plaintiff. Despite the settlement conversations, Plaintiff alleges that WaMu and its agents engaged in the "break-ins." Id., ¶¶ 2-20. In addition to the "break-ins," WaMu and its agents allegedly 1) failed to advise who was hired to change the locks and "winterize" the Property; (2) failed to advise who was in possession of

---

[4] The Court notes that this is furthered evidenced by the fact that Plaintiff does not dispute the assertion by Defendants that she was in default. Indeed, it is Plaintiff's default that gave rise to the incident about which Plaintiff complains.

[5] Although not pled in the Complaint, Plaintiff does not dispute that LPS is a company that provides services, such as winterizing and maintenance, to lenders who need to secure properties that are in the process of being foreclosed.

3

Plaintiff's keys to the Property; and 3) failed to surrender the keys to the Manchester Police Department.  Id.  Plaintiff alleges that she reported the February 14, 2008 incident to the Manchester Police Department, as well as her insurance company, defendant Allstate.  Third Party Complaint, First Count, ¶¶ 2, 4.

Plaintiff then filed an insurance claim for theft and burglary with Allstate on or about February 18, 2008, under the claim #0111040713.  Third Party Complaint, First Count, ¶¶ 4-5. Subsequently, Plaintiff alleges that Allstate denied Plaintiff's claim, despite having an obligation to reimburse Plaintiff for destruction and/or theft of personal property resulting from the "break-ins."  Id., ¶¶ 8, 10.  Plaintiff further asserts that Allstate "failed to find the person or persons responsible for the burglary of Plaintiff's home."  Id., ¶ 10.

Plaintiff filed the instant action against Defendants in the Superior Court of New Jersey on December 14, 2009.  The Complaint and the Third Party Complaint assert twenty-nine counts against Defendants, alleging a variety of causes of action, including violations of the federal constitution.  Chase then removed the case to this Court on January 15, 2010, based on federal question jurisdiction.  A summary of all counts in the Complaint and the Third-Party Complaint is provided in the chart below:

| | |
|---|---|
| Count I, Complaint; Count I, Third Party Complaint | Breach of Contract |
| Count II, Complaint; Count II Third Party Complaint | Breach of Implied Covenant of Good Faith and Fair Dealing |
| Count III, Complaint | Interference with Contract by Outsider |
| Count IV, Complaint | Trespass to Land |
| Count V, Complaint | Trespass to Property |
| Count VI, Complaint | Conversion |

| | |
|---|---|
| Count VII, Complaint; Count III, Third-Party Complaint | Fraud |
| Count VIII, Complaint; Count IV, Third-Party Complaint | Violations of New Jersey Consumer Fraud Act ("NJCFA") |
| Count IX, Complaint | Failure to Cooperate with Plaintiff's Agent and/or Insurance Company |
| Count X, Complaint; Count V, Third-Party Complaint | Negligence |
| Count XI, Complaint; Count VI, Third-Party Complaint | Negligent Misrepresentation |
| Count XII, Complaint | Violations of the 4th Amendment of the United States Constitution |
| Count XIII, Complaint; Count VII, Third-Party Complaint | Violations of the 9th Amendment of the United States Constitution |
| Count XIV, Complaint | Violations of the 10th Amendment of the United States Constitution |
| Count XV, Complaint; Count VIII, Third-Party Complaint | Violations of the Privacy Act |
| Count XVI, Complaint; Count IX, Third-Party Complaint | Slander |
| Count XVII, Complaint; Count X, Third-Party Complaint | Defamation of Character |
| Count XVIII, Complaint; Count XI, Third-Party Complaint | Intentional Infliction of Emotional Distress |

In response to the Complaint, Allstate moves to dismiss all counts, claiming that the statute of limitations on Plaintiff's insurance claims has expired. FDIC moves to substitute in the case as the real party of interest in place of Chase, and it moves to dismiss all counts based on this Court's lack of subject matter jurisdiction over claims against FDIC. Finally, LPS moves to dismiss all counts except Counts IV, V, VI, and X. The Court will address and resolve of all three

motions in this Opinion.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 555 U.S. at 555).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief

survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir.2004).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, No. 09-4468, 2010 WL 4840093, at *8 (3d Cir. Nov. 29, 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. at *7 (quoting Ashcroft, 129 S.Ct. at 1953).

### III.   Discussion

#### A.   FDIC

As a preliminary matter, when faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether we are dealing with a facial or factual attack to jurisdiction. If this is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). "If this is a factual attack, however, it is permissible for a court

to review evidence outside the pleadings." Id.  A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." Id.  In the instant matter, FDIC does not allege that the Complaint is deficient in any way.  Instead, FDIC makes a factual challenge that Plaintiff's claims fail to comport with the jurisdictional prerequisites set forth by Congress in actions against FDIC in its capacity as receiver.  As such, the Court is permitted to consider evidence outside of the pleadings when determining FDIC's motion.

The Federal Deposit Insurance Corporation is a federal agency created by Congress to insure the deposits of all banks and savings associations. 12 U.S.C. § 1811(a).  One of its statutory duties is to serve as conservator or receiver of an insured depository institution whenever such institution is deemed to unable to meet the demands of its depositors.  See 12 U.S.C. § 1821(c).  On September 25, 2008, by the order of the Office of Thrift Supervision, Order # 2008-36, WaMu was declared insolvent and FDIC was appointed as receiver.[6]  FDIC's Brief, Exhibit A.  FDIC then sold the assets and only certain designated liabilities of WaMu to Chase, explicitly retaining under the purchase agreement all liabilities arising out of WaMu's pre-insolvency lending activities. FDIC's Brief, Exhibit E.  As receiver and the true party liable for Plaintiff's claims, all of which arise out of WaMu's lending activities, FDIC steps in as the true defendant of Plaintiff's claims against WaMu/Chase.

In its motion to dismiss, FDIC seeks to dismiss all counts of the Complaint and Third-Party

---

[6] Plaintiff does not dispute the order appointing FDIC as receiver of WaMu, nor does Plaintiff dispute that FDIC is the successor-in-interest to WaMu.  Also, as Plaintiff named Chase as the successor of WaMu in the Complaint, it appears that Plaintiff is also well aware of Chase's purchase of WaMu's assets, which includes Plaintiff's mortgage with WaMu.

Complaint against FDIC, without prejudice, because it contends that 1) Plaintiff has not exhausted all administrative remedies; and 2) this Court lacks jurisdiction over claims against FDIC. During the pendency of its motion, FDIC informed the Court that Plaintiff had submitted a proof of claim to the FDIC-R, an administrative entity, and a final decision (denial) was issued against Plaintiff. In that regard, Plaintiff has purportedly exhausted her administrative remedies and therefore, FDIC seeks to dismiss all counts with prejudice.

Title 12, Section 1821 of the United States Code, which governs the rights and duties of FDIC, states that:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). Claimants, however, are entitled to administrative determination of their claims. 12 U.S.C. § 1821(d)(5). Once an administrative decision is final, a claimant may seek judicial review of FDIC's final decision "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." 12 U.S.C. § 1821(d)(6)(A).

To support its contention that Plaintiff does not meet the jurisdictional requirements under § 1821, FDIC submits evidence of its appointment as the receiver of WaMu, and the purchase agreement between FDIC and Chase, as detailed above. FDIC further asserts that WaMu's principle place of business is located in the state of Washington; indeed, at least, WaMu's principle

place of business does not appear to be in the State of New Jersey. Plaintiff makes no factual challenge to either assertion. Because FDIC is a bona fide receiver for WaMu, FDIC argues that § 1821's jurisdictional requirements directly govern Plaintiff's claims against WaMu, and Plaintiff fails to meet these requirements. The evidence on the record supports this assertion.

As the statutes make clear, this Court has no jurisdiction over <u>any</u> claims for payment or claims relating to acts or omissions against FDIC in its capacity as a receiver. Since FDIC was appointed as the receiver for WaMu, and all of Plaintiff's claims against FDIC either seeks payment or are related to acts or omissions by WaMu, this Court has no jurisdiction over these claims. <u>See</u> <u>Rosa v. Resolution Trust Corp.</u>, 938 F.2d 383, 391-93 (3d Cir. 1991). Even if the Court considers the Complaint as one seeking judicial review, because WaMu's principle place of business is not located within this District, this Court also does not have jurisdiction to conduct such review. As such, the Court must grant FDIC's motion and dismiss, <u>without prejudice</u>, all of Plaintiff's claims against FDIC, for lack of subject-matter jurisdiction. <u>Fed. R. Civ. P.</u> 12(h)(3). In that respect, FDIC's position regarding the final decision by the FDIC-R should be made to the appropriate district court.

**B. Allstate**

Allstate seeks to dismiss all claims against it because, according to Allstate, the insurance policy it entered into with Plaintiff limits all legal claims arising out of such policy within one year of date of loss. To support its contention, Allstate submitted a copy of the insurance policy, which bears Plaintiff's name, and the policy number matches the same policy Plaintiff asserts in the Third Party Complaint. Allstate's Brief, Exhibit A, at *4; Third Party Complain, First Count, ¶ 2.

However, Plaintiff's address on the policy is different than that of the Property.[7] According to this copy, "[a]ny suit or action must be brought within one year after the inception of loss or damage." Id. at *28. Plaintiff disputes the authenticity of the submitted policy, claiming that it is not the same policy she obtained from Allstate.

Both parties do not dispute that the alleged theft and burglary occurred on February 14, 2008. According to Allstate, the claim was considered and ultimately denied on November 14, 2008. Also, according to Chase's Notice of Removal, the Complaint was filed on December 14, 2009, and if the above contractual statute of limitations applies, Allstate asserts that Plaintiff is barred from asserting claims arising out of the insurance contract, regardless whether the date of loss is defined as the date of theft – which is February 14, 2008 – or the date of denial of the claim, because the filing date of this action was beyond one year from both dates.

However, as stated above, Plaintiff disputes the authenticity of the submitted policy by maintaining that the insurance policy she obtained from Allstate did not contain such a contractual statute of limitations. Furthermore, even if such a statute of limitations did exist, Plaintiff contends that it has not run with regard to Plaintiff's claims because 1) Plaintiff submitted her insurance claim to Allstate within one year of theft; 2) Plaintiff filed a complaint against Allstate in Ocean County on October 29, 2009, within one year of her claim denial; and 3) Plaintiff never received the notice of denial sent by Allstate on November 14, 2008.

At the outset, with regard to Plaintiff's assertion that the contractual statute of limitations was tolled by her filing a claim with Allstate, the argument is clearly misplaced. The statute of

---

[7] The address on this copy of the policy submitted by Allstate, nevertheless, is the same address under which Plaintiff filed her Complaints.

11

limitations provision of the policy applies only to legal actions; when or whether Plaintiff submitted an insurance claim with Allstate is irrelevant in determining the relevant period of statute of limitations.

Plaintiff next argues that she initiated this action against Allstate in Ocean County, New Jersey, on October 29, 2009, and thus, this action is within one year from November 14, 2008, the date of denial.[8] Plaintiff further argues that she never received the notice of denial, and therefore, without such notice, the contractual statute of limitations has not expired. To properly consider the issue of statute of limitations, the Court would have to look beyond the pleadings to determine the provisions of Plaintiff's insurance policy, the proper filing date of the instant action in state court, and whether Plaintiff received the letter denying her insurance claim on November 14, 2008. Therefore, pursuant to Fed. R. Civ. P. 12(d), the Court converts Allstate's motion to dismiss to a summary judgment motion. In that regard, Plaintiff and Allstate are instructed to submit any additional evidence that may be relevant to the Court's determination of Allstate's motion within 20 days from the date of the Order accompanying this Opinion.

### C. LPS

LPS moves to dismiss all counts of the Complaint and the Third-Party Complaint, except for Counts IV, V, VI, and X; these counts relate to the allegations regarding trespass, theft, conversion and negligence as a result of the "break-ins." The Court addresses these counts below.

---

[8] With respect to the October 29, 2009 filing, it is unclear to which action Plaintiff refers. It appears the only suit regarding Plaintiff's claims in the record is the instant action which according to the Notice of Removal was filed in state court on December 14, 2009. The Notice of Removal refers to the state court docket for the filing date; the Complaint has no date stamp.

      **1.**      **Breach of Contract and Breach of the Implied Covenant of Fair Dealing (Counts I and II of Complaint, Counts I & II of Third-Party Complaint)**

To establish a breach of contract claim, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J.Super. 245, 265 (App. Div. 2007); Video Pipleine, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002). To form a contract, "an offer and its acceptance are required." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 250 (3d Cir. 2007).

Here, essentially, Plaintiff alleges that she had a mortgage with WaMu. When Plaintiff defaulted on that mortgage, WaMu and/or JP Morgan allegedly hired LPS or some other agent to enter the Property without consent and perform certain services at the direction of WaMu. Plaintiff alleges that WaMu and/or LPS caused her to suffer damages to land and personal property. However, while Plaintiff expressly alleges that she had a mortgage contract with WaMu, nowhere in Plaintiff's Complaint does she allege that she entered into a contract with LPS. Indeed, in her opposition, Plaintiff only refers to LPS as WaMu's agent and re-alleges her negligence/conversion/trespass type claims against LPS and others. In fact, throughout the Complaint, the Court can only discern two contracts Plaintiff mentions: (1) a mortgage between Plaintiff and WaMu; and (2) a homeowner's policy of insurance between Plaintiff and Allstate. As such, Plaintiff fails to plead the first, and most fundamental, element of breach of contract - the existence of a contract. Because of this deficiency, Plaintiff's breach of the implied covenant of good faith and fair dealing cannot survive since this claim depends on the existence of a contract. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair

13

dealing is implied in every contract in New Jersey . . .").

### 2. Interference with Contract by Outsider (Count III of the Complaint)

To state a claim for tortious interference with business relationships, a plaintiff must allege that: "(1) it had a continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) the defendant knew of such relationship of expectancy; (3) the interference and harm inflicted were done intentionally and with "malice" in the sense of conduct that is wrongful and without justification or excuse; (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of defendant's conduct." See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751-52 (1989).

Here, Plaintiff alleges conclusorily that LPS "did intentionally commit acts which interfered with Plaintiff's alleged third party contract with Plaintiff's roommate and potential roommates by making the home unsafe . . . ." Compl., Count III ¶¶ 2-5. However, Plaintiff fails to allege any facts that she had a business expectancy from roommates or potential roommates. In that regard, Plaintiff does not identify a roommate or any potential roommates. More importantly, Plaintiff does not allege that LPS knew that such relationship of expectancy existed. In fact, none of the elements are sufficiently alleged. There is no allegation regarding malice, or that not for LPS's alleged tortious conduct, Plaintiff would have realized the economic benefit from either a current or potential roommate. The vague assertions regarding roommates fail to raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555.

       3.      **Fraud (Count VII of Complaint, Count III of the Third Party Complaint)**

An action for common-law fraud requires proof of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Included within the first element are promises made without the intent to perform since they are "material misrepresentations of the promisor's state of mind at the time of the promise." Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384, 391 (App. Div.1960); accord Lipsit v. Leonard, 64 N.J. 276, 283 (1974). Moreover, in asserting fraud, Plaintiff must meet the heightened pleading requirements pursuant to Fed. R. Civ. P. 9(b). See Fed. R. Civ. P. 9(b) ( "[i]n all averments of fraud…, the circumstances constituting fraud. . .shall be stated with particularity.").

Here, at the outset, Plaintiff does not allege the type of fraud claim she seeks to assert against LPS. Rather, Plaintiff merely re-states allegations concerning the alleged trespass and theft, and in a conclusory manner, asserts that these types of conduct constitute fraud. In that regard, Plaintiff does not identify one misrepresentation of fact, let alone a material fact, that was made to her by LPS. See Compl., Count VII, ¶¶ 2-5. Indeed, Plaintiff alleges several misstatements of fact made by WaMu; however, these misrepresentations regarding her mortgage were not alleged to have been made by LPS. Because of this fundamental pleading deficiency, the Court dismisses these fraud counts against LPS.

       4.      **New Jersey Consumer Fraud Act (Count VIII of Complaint, Count IV of Third Party Complaint)**

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a private "plaintiff must allege each of [the] three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13, 842 A.2d 174 (App. Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994)).

The NJCFA defines unlawful conduct as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission<u>, in connection with the sale or advertisement of any merchandise or real estate</u> . . . whether or not any person has in fact been misled, deceived or damaged hereby . . . .

N.J.S.A. 56:8-2 (emphasis added).  The NJCFA further defines "merchandise" to include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly <u>to the public for sale</u>."  N.J.S.A. 56:8-1(c) (emphasis added).

Here, Plaintiff's NJCFA claims against LPS must be dismissed because she has failed to allege that LPS is a seller of merchandise or services under the NJCFA; in that, Plaintiff fails to allege that LPS sold any products or services to Plaintiff as a consumer in the "popular sense." See Neveroski v. Blair, 141 N.J. Super. 365, 378 (App. Div. 1976).  Instead, Plaintiff alleges that LPS is an agent of WaMu and that it illegally trespassed onto her property, and Plaintiff does not allege that LPS sold anything to her, or attempted to sell Plaintiff any merchandise or services through advertisement or otherwise.  Accordingly, Plaintiff's NJCFA claims against LPS are dismissed.

### 5. Failure to Cooperate with Plaintiff's Agent and/or Insurance Company (Count IX of Complaint)

As defendant LPS correctly contends, Count IX - failure to cooperate - is not a recognizable cause of action either under any statute or common law. Indeed, Plaintiff has not cited to any case law or statute that would support the existence of this cause of action. As such, because this claim has no basis in law, the Court dismisses Count IX asserted against LPS.

### 6. Negligent Misrepresentation (Count XI, Complaint; Count VI, Third-Party Complaint)

"A cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 119 N.J. 135, 146 (1990). A "negligent misrepresentation constitutes '[a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance.'" McClellan v. Feit, 376 N.J. Super. 305, 317 (App. Div. 2005) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983)); see also Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000); Union Ink Co. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div.), certif. denied, 174 N.J. 547 (2002).

In this case, similar to the fraud claim, Plaintiff fails to identify any false representation, negligent or otherwise, that LPS made to Plaintiff. While Plaintiff alleges that LPS made statements such as "I am with the bank" or "the bank hired me," see Compl, Count XI, ¶ 4, Plaintiff does not allege that this statement is false or negligently made. Fatally, Plaintiff does not allege that she justifiably relied on that statement for any purpose, let alone the statement resulted in any damages as a consequence of that reliance. As such, Plaintiff's negligent misrepresentation claims are dismissed against LPS.

> **7.    Violations of 4th, 9th, 10th, Amendments of the United States Constitution and Privacy Act (Counts XII, XIII, XIV, XV of Complaint and Counts VII, VIII of Third-Party Complaint)**

Plaintiff fails to state a claim under the 4th, 9th and 10th Amendments of the federal Constitution, and under the Privacy Act, 5 U.S.C. § 522, et. seq.  With respect to the Fourth Amendment claim – unlawful search and seizure– the Supreme Court has made abundantly clear that the protection afforded by this Amendment only applies to governmental action; "it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."  United States v. Jacobson, 466 U.S. 109, 130 (1984).  Because Plaintiff does not allege that LPS is a state actor or acting on behalf of a state actor, this claim fails.[9]

As to Plaintiff's 9th Amendment claim, a private cause of action for damages pursuant to the Ninth Amendment has not been recognized, as the Ninth Amendment confers no substantive rights for the purposes of a constitutional claim.  Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986); Balazinski v. Webster Lines, No. 07-2121, 2009 WL 799285, at *7 (D.N.J. Mar. 25, 2009); Nicolette v. Caruso, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003); Onyiuke v. New Jersey State Supreme Court, 435 F. Supp. 2d 394, 409 (D.N.J. 2006), rev'd on other grounds, 242 Fed. Appx. 794.  As such, because Plaintiff is bringing a private cause of action under the Ninth Amendment, this claim against LPS is dismissed.

 The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the

---

[9]    At the time of LPS alleged conduct, LPS was acting at the behest of WaMu, not FDIC.

people." U.S. Const. amend X. The Court need not tarry long on this argument because Plaintiff does not have standing to raise this claim. See United States v. Shenandoah, 595 F.3d 151, 161-62 (3d Cir. 2010). Indeed, a "private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities." Id.; see also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 234-36 (2d Cir. 2006); Medeiros v. Vincent, 431 F.3d 25, 33-36 (1st Cir. 2005); United States v. Parker, 362 F.3d 1279, 1284 (10th Cir. 2004). Here, Plaintiff's claim against LPS in this context does not involve the state or federal government, and thus, Plaintiff cannot sue under the Tenth Amendment.

Finally, "the civil remedies portion of the Privacy Act explicitly states that it applies to agencies, thus eliminating the possibility of a cause of action under the Privacy Act against any natural person sued under the act . . . ." Fetzer v. Cambria County Human Servs., 384 F. Supp. 2d 813, 815-16 (W.D. Pa. 2005); see Schmitt v. City of Detroit, 395 F.3d 327, 329 (6th Cir. 2005) (the Privacy Act applies only to federal agencies, not state or local agencies and not individuals); Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999); Connelly v. Comptroller of the Currency, 876 F.2d 1209, 1215 (5th Cir. 1989); Polchowski v. Gorris, 714 F.2d 749, 752 (7th Cir. 1983); Wren v. Harris, 675 F.2d 1144, 1148, n.8 (10th Cir. 1982). Accordingly, this Court finds that as a matter of law, an action under the Privacy Act cannot be maintained against LPS, a private actor.

      **8.**     **Intentional Infliction of Emotional Distress (Count XVIII of Complaint, Count IX of Third-Party Complaint)**

To establish a claim for intentional infliction of emotional distress, "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is

severe." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).   Initially, "the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress." Id.  Next. the defendant's conduct must be alleged as "extreme and outrageous." Id. (citations omitted).  In that connection, the alleged conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (citations omitted).  The New Jersey Supreme Court has noted that "[t]he severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." Id. at 367 (citations omitted).

    Here, even assuming all the allegations against LPS are true, the facts pled in the Complaint do not give rise to a claim for intentional infliction of emotional distress.  Indeed, the conduct involving the alleged trespasses and theft does not rise to the level of being extreme and outrageous. Hence, Plaintiff has failed to state a claim in this respect.


Date: December 22, 2010                            /s/ Freda L. Wolfson
                                                     The Honorable Freda L. Wolfson
                                                     United States District Judge